UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: MICHAEL BROWN RICHESIN,            No. 7-04-10884 MA

       Debtor.

PHILIP J. MONTOYA,

       Plaintiff,

v.                                             Adversary No. 07-1034 M

DONALD W. RICHESIN and
MICHAEL B. RICHESIN,

       Defendants.

## MEMORANDUM

THIS MATTER is before the Court on the motions for summary judgment filed by Defendants Michael Richesin and Donald Richesin.[1] Defendant Michael Richesin's motion for summary judgment raises the following arguments: 1) that the adversary proceeding is time-barred by operation of 11 U.S.C. § 546(a); 2) that Defendant Michael Richesin had no ownership interest in The Car Company, Inc. or in Lomas Auto Mall, Inc. as of the date of the filing of the petition, so that the stock of such companies is not subject to turnover under § 542 because it is not property of the estate; and 3) that Plaintiff cannot sustain a claim based on alter-ego or piercing the corporate veil because under applicable New Mexico law, such claims require proof of fraud or other culpable activity, which was not plead with sufficient particularity as required

---

[1] (*See* Docket #9 - Defendant Michael B. Richesin's Motion for Summary Judgment Against Trustee and Memorandum in Support and Docket #11 - Defendant Michael B. Richesin's [sic] Motion for Summary Judgment Against Trustee and Memorandum in Support)

1

under Rule 9(b), Fed.R.Civ.P.  Defendant Donald W. Richesin's motion for summary judgment also asserts that Plaintiff's claim for recovery of an alleged fraudulent transfer under 11 U.S.C. § 548 is time-barred by operation of 11 U.S.C. §546(a).  In support of the Motion for Summary Judgment, Defendant Michael Richesin filed an Affidavit with several exhibits attached. (*See* Docket # 10).   Plaintiff filed a response to the motions for summary judgment, with several exhibits attached, asserting that genuine issues of material fact preclude summary judgment. (*See* Trustee's Response to Motion to Dismiss (Docket No. 8) and Motions for Summary Judgment (Docket Nos. 9 and 11) ("Trustee's Response" - Docket #13)).

Based on the motions for summary judgment, the affidavit and exhibits offered in support thereof, and the Plaintiff's response with supporting exhibits, the Court finds that genuine issues of material fact preclude summary judgment as to Defendants' assertion that the action is time-barred under 11 U.S.C. § 546 and as to Defendant Michael Richesin's contention that he never had any interest in the stock of Lomas Auto Mall, Inc. and had no ownership interest in the stock of The Car Company, Inc. as of the date of the filing of his bankruptcy petition.

With regard to Defendant Michael Richesin's argument that Plaintiff's cause of action based on corporate alter ego theories and/or piercing the corporate veil should be dismissed because such causes of action require a showing of fraud that Plaintiff has failed to plead with sufficient particularity, the Court finds that such claims under New Mexico law do not implicate Rule 9(b), Fed.R.Civ.P.  But because the Complaint contains only conclusory allegations of dominion and control and fails to allege the remaining elements necessary to such a claim, the Court finds that Plaintiff should be required to amend the Complaint or suffer dismissal of those portions of the Complaint that rely on alter-ego as a basis for recovery.

2

STANDARDS

Summary judgment is appropriate when all pleadings, depositions, answers to interrogatories, admissions and affidavits on file "show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.* 144 F.3d 664, 670 (10th Cir. 1998), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment. *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988)(citation omitted).

Dismissal for failure to plead a claim for alleged fraud with sufficient particularity is governed by Rules 9(b) and 12(b)(6), Fed.R.Civ.P., made applicable to bankruptcy proceedings by Rules 7009 and 7012, Fed.R.Bankr.P.,[2] Rule 9(b), Fed.R.Civ.P. provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b), Fed.R.Civ.P.

"One of the purposes for Rule 9(b) is 'to afford defendant fair notice of plaintiff's claims and the

---

[2]*See Seattle-First Nat. Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir. 1986) (per curiam) ("The dismissal of a complaint or counterclaim for failing to satisfy the requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be granted under Fed.Rules Civ.P. 12(b)(6)")(citations omitted).

factual background upon which [they] are based . . .'" *In re Universal Factoring Co., Inc.,* 279 B.R. 297, 300 (Bankr.N.D.Okla. 2002) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir.2000)). "'Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake.'" *Seattle-First Nat. Bank v. Carlstedt,* 800 F.2d at 1011 (quoting *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757, 774 (D.Colo. 1964)). Generally, however, "Rule 9(b)'s requirement that 'circumstances constituting fraud' be pleaded with particularity means that the plaintiff must specify the source, time, place, manner and content of the allegedly fraudulent representations, and the consequences thereof." *In re Commercial Fin. Services, Inc.,* 322 B.R. 440, 448 (Bankr.N.D.Okla. 2003) (citing *Koch v. Koch Indus.,* 203 F.3d at 1236)(remaining citations omitted).

## FACTS

The following facts are undisputed:

1. Lomas Auto Mall, Inc. is a New Mexico corporation organized on November 30, 1999. For some period of time, Debtor Michael Richesin served as president of Lomas Auto Mall, Inc.

2. The Car Company, Inc. is a New Mexico corporation organized on March 22, 1993. Defendant Michael Richesin is the president of The Car Company, Inc. Defendant Michael Richesin owns 100% of the stock of The Car Company, Inc., subject to a lien by a third party on the entirety of the stock. (*See* Defendant Michael Richesin's Answer to Trustee's Complaint

4

filed 3/1/2007; Docket # 7).[3]

3. Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on February 10, 2004.

4. The Chapter 13 Trustee was appointed as trustee in the Debtor's chapter 13 proceeding on the same day.

5. On March 30, 2005, the case converted from Chapter 13 to Chapter 11.

6. On July 7, 2006, the case converted from Chapter 11 to Chapter 7, and Plaintiff was appointed Chapter 7 Trustee.

7. On March 1, 2007, the Chapter 7 Trustee filed this adversary proceeding seeking turnover of certain alleged property of the estate under § 542, and seeking to avoid alleged fraudulent transfer(s) under §§ 548 and 550. *See* Complaint to Avoid Fraudulent or Post-Petition Transfer, to Recover Property for the Estate, and for Turnover ("Complaint"). The Complaint also asserts that Lomas Auto Mall, Inc. and The Car Company, Inc. are alter egos of each other. *See* Complaint, ¶ 10.

8. The case converted from Chapter 13 to Chapter 11 within two years of the date of the filing of the petition.

DISCUSSION

<u>Whether the Complaint is Time-barred Under 11 U.S.C. § 546(a)</u>.

Section 546 contains a statute of limitations applicable to proceedings to recover alleged

---

[3]Defendant Donald Richesin stated in his answer to the complaint that he is without knowledge sufficient to admit or deny these facts. (*See* Defendant Donald Richesin's Answer to Trustee's Complaint filed on March 1, 2007 - Docket # 6). Because these facts relate only to the claims against Defendant Michael Richesin, the Court has included it as part of the undisputed facts even though Defendant Donald Richesin has not admitted these facts.

5

fraudulent transfers under 11 U.S.C. § 548.[4]  It provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of --
>   (1) the later of--
>     (A) 2 years after the entry of the order for relief; or
>     (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>   (2) the time the case is closed or dismissed.
>
> 11 U.S.C. § 546(a).

Under 11 U.S.C. § 546(a), the limitation period expires two years after the order for relief, or one year after the appointment of the first trustee, whichever is later, provided the trustee is appointed during the two-year period following the order of relief. 11 U.S.C. § 546(a). A mechanical application of 11 U.S.C. § 546(a) to this adversary proceeding indicates that the Plaintiff's claim for recovery of the stock of Lomas Auto Mall, Inc. as an alleged fraudulent transfer is time-barred.

The Defendant-Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on February 10, 2004.  By operation of 11 U.S.C. § 301, the commencement of the Defendant-Debtor's voluntary bankruptcy case constituted an order for relief.  The two-year limitations period following the order for relief ended February 10, 2006.  Under 11 U.S.C. § 546(a)(1)(B), the alternate period provided under the statute, the Chapter 13 Trustee was the first trustee appointed under 11 U.S.C. § 1302 upon the commencement of the Defendant-Debtor's voluntary Chapter 13 proceeding.  One year after the appointment of the first trustee expired

---

[4] The limitations period set forth in 11 U.S.C. § 546(a) does not apply to actions for turnover brought under 11 U.S.C. § 542. *See* 11 U.S.C. § 546(a).

February 10, 2005. This adversary proceeding was not filed until March 1, 2007 well outside the later of the two expiration dates provided under § 546(a)(1). Thus, because 11 U.S.C. § 546(a) sets as the outer limit the expiration of the periods in subsection (1) or the time the case is closed or dismissed (whichever is earlier), and because both of the limitation periods set forth under subsections (A) and (B) of subsection (1) expired before the Plaintiff filed the Complaint, the claim for recovery of an alleged fraudulent transfer under § 548 is untimely.

Plaintiff urges the Court to toll the limitations period during the time the case proceeded under Chapter 11. Under Plaintiff's theory, because the case converted from Chapter 13 to Chapter 11 during the two year limitations period, the statute of limitations should not recommence until conversion of the case to Chapter 7 in order to afford the Chapter 7 trustee an opportunity to bring a timely action for fraudulent transfer under 11 U.S.C. § 548. Plaintiff asserts that because the Defendant-Debtor had little incentive to bring a fraudulent transfer action during the pendency of the case under Chapter 11, public policy weighs in favor of tolling the limitations period during the pendency of the Chapter 11. This Court disagrees.

Section § 546(a)(1) applies to avoidance actions commenced by a debtor-in-possession during the pendency of a case under Chapter 11. *See Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 5124 (10th Cir. 1990)("we construe § 546(a)(1) to apply to actions filed by a debtor in possession, and we believe the period of limitation begins to run from the date of the filing of a petition for reorganization under chapter11."). In *Jobin v. Boryla (In re M & L Bus. Mach. Co., Inc.),* 75 F.3d 586 (10th Cir. 1996), the Tenth Circuit considered whether the limitations period should begin anew following the conversion of a case from Chapter 11 to Chapter 7. It held that it does not, and applied the plain language of 11 U.S.C. § 546(a), noting that "[o]nce a trustee is

7

appointed, the limitations period is set in motion." *Id.* at 590 (citing *Gillman v. Mark Oakes Trucking (In re CVA Assocs.)*, 171 B.R. 122, 127 (D.Utah 1994)). As stated by the court in *CVA Assocs.,* "[a]lthough a trustee may be appointed under a variety of different Code sections, § 546(a) plainly states that once any trustee has been appointed, the two year limitations period begins to run." 171 B.R. at 127. And while it is unusual for a case to begin as a Chapter 13, convert to Chapter 11, and then convert to Chapter 7 more than two years after the commencement of the bankruptcy proceeding, these facts alone are insufficient to toll the limitations period contained in 11 U.S.C. § 546(a) according to its terms. "[T]he focus of statutes of limitations is to protect defendants-not to provide a clean slate for trustees to bring old claims." *CVA Assocs.,* 171 B.R. at 128 (citations omitted). Plaintiff's policy arguments must, therefore, fail in the face of the plain language of the statute.

Alternatively, Plaintiff argues that equitable tolling should prevent the statute from running. "Section 546(a) is subject to the doctrine of equitable tolling." *M & L Bus. Mach.,* 75 F.3d at 591 (citing *In re United Ins. Management, Inc.,* 14 F.3d 1380, 1384 (9th Cir. 1994)). Under the doctrine of equitable tolling, the statute of limitations under 11 U.S.C. § 546(a) will not run when the trustee, despite the exercise of due diligence, is prevented from timely asserting a cause of action due to fraud. *M & L Bus. Mach.*, 75 F.3d at 591.[5] Generally, equitable tolling

---

[5]*In re Dec,* 272 B.R. 218, 224 (Bankr.N.D.Ill. 2001)(under equitable tolling doctrine, "a plaintiff may avoid the bar of a statute of limitations if despite all due diligence on its part, it is unable to obtain vital information bearing on the existence of its claim)(citations omitted). *See also, Moratzka v. Pomaville (In re Pomaville),* 190 B.R. 632, 636-637 (Bankr.D.Minn.1995) (stating that "[w]hen fraud goes undiscovered because the defendant has taken positive steps after commission of the fraud to keep it concealed, § 546(a)(1) is tolled until there is actual discovery of the fraud" (citing *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir.1987) and noting further that "[i]n such instances there is no obligation on the part of the plaintiff to use due diligence to discover the fraud" (citing *In re Lyons,* 130 B.R. 272, 280 (Bankr.N.D.Ill.1991). . . .

8

requires the following: 1) wrongful conduct that prevented plaintiff from timely asserting the claim; and 2) extraordinary circumstances outside the plaintiff's control which made it impossible to timely assert the claim. *See In re Hydro-Action, Inc.,* 341 B.R. 186, 190 (Bankr.E.D.Tex. 2006) (stating that "'the application of equitable tolling is appropriate where: (1) a defendant has actively misled a plaintiff; (2) a plaintiff has been prevented , in some extraordinary way or circumstance, from asserting his rights; or (3) a plaintiff has asserted his rights in a timely manner, but in the wrong forum.'")(quoting *In re Miller,* 333 B.R. 368, 372 (Bankr.N.D.Tex. 2005).[6] Equitable tolling does not apply just because it was impossible for the Chapter 7 trustee to commence a proceeding due to the fact that the trustee's appointment occurred after the expiration of the limitation period. *See Hydro-Action,* 341 B.R. at 191 (noting that "the singular fact that the limitations period expired prior to the appointment of the Chapter 7 trustee does not constitute an equitable consideration sufficient to trigger the tolling doctrine."). *See also In re Bodenstein,* 253 B.R. 46, 50 (8th Cir. BAP 2000)(finding that equitable tolling did not apply to toll the limitations in § 546(a) during pendency of Chapter 13 proceeding). Whether equitable tolling should be applied is a fact-based inquiry. *See Pomaville,* 190 B.R. at 636 ("Because the applicability of equitable tolling is a fact-based decision, the bankruptcy court determines whether equitable tolling governs in any given case.")(citation

---

because "[t]he defendant's conduct justifies tolling of the statute of limitations.")).

[6]*In re J & D Sciences, Inc.,* 335 B.R. 791, 797 (Bankr.M.D.Fla. 2006)("In the case of . . . a fraudulent transfer, application of the principle of equitable tolling requires the trustee to prove that: (1) the alleged fraud was concealed by affirmative acts or misrepresentations by any of the parties involved; or (2) if the fraud was not affirmatively concealed, it went undiscovered in spite of the trustee's due diligence to discover the fraud.")(citing *IBT Int'l, Inc., v. Northern, (In re Int'l Admin. Services, Inc.),* 408 F.3d 689, 701 (11th Cir. 2005)).

9

omitted). *See also, Hydro-Action,* 341 B.R. at 191 (stating that equitable tolling is generally a fact question, but acknowledging that it can, in certain circumstances be decided as a matter of law)(citation omitted). Plaintiff asserts in his response that Debtor never scheduled the stock of the Lomas Auto Mall, Inc. in his bankruptcy statements and schedules, and has actively concealed his interest in that entity during the pendency of his bankruptcy proceeding. In several of the cases which decline to apply equitable tolling, the transfers at issue were clearly disclosed in the debtor's statements and schedules. *See, e.g., Bodenstein,* 253 B.R. at 50 (noting that the debtors disclosed the transfers in their original statement of financial affairs so that the Chapter 13 trustee was aware of those transfers at the outset); *Hydro-Action,* 341 B.R. at 192-193 (all preferential transfers and transferees were disclosed in schedules; equitable tolling did not apply to the trustee's claims under 11 U.S.C. § 547). In this case, they were not. Whether Defendant-Debtor actively concealed an interest in Lomas Auto Mall, Inc. and whether this is sufficient to apply equitable tolling to Plaintiff's fraudulent transfer claims is a question of fact that precludes summary judgment in favor of Defendants at this time. *Cf. M & L Bus. Mach.,* 75 F.3d at 591 (declining defendants' invitation to deny equitable tolling as a matter of law). In addition, there has been little indication of the Plaintiff's diligence in investigating and bringing this action. Nearly eight months elapsed between the date the case converted to Chapter 7 and the date the Plaintiff filed this adversary proceeding. But because equitable tolling is a question of fact and because Defendants' argument was limited to the strict application of 11 U.S.C. § 546(a), the Court cannot not grant summary judgment on this issue.

<u>Summary judgment cannot be granted on claims for turnover under 11 U.S.C. § 542.</u>

With regard to the stock of Lomas Auto Mall, Inc., Defendants contend that the stock

10

was initially issued to Donald Richesin and that Michael Richesin never had any ownership interest in the stock. In support of this contention, Michael Richesin filed an Affidavit stating, among other things, that he never owned any stock of Lomas Auto Mall, Inc., that he never served as its president, and that he signed documents as president on behalf of the Lomas Auto Mall, Inc. only as "authorized agent and on behalf of the actual president of the company, Donald Richesin." *See* Affidavit of Michael Richesin, ¶ 7. Attached to the Affidavit of Michael Richesin is a copy of the stock certificate for Lomas Auto Mall, Inc. in the amount of 50,000 shares issued to his brother, Defendant Donald Richesin. However, the stock certificate is undated. Moreover, Plaintiff attached as exhibits to his response a copy of a corporate information inquiry sheet from the New Mexico Public Regulation Commission reflecting Michael Richesin as president of Lomas Auto Mall, Inc., and a Financing Statement and Security Agreement dated April 23, 2004 signed by Michael Richesin as president on behalf of both Lomas Auto Mall, Inc. and The Car Company, Inc. The Financing Statement and Security Agreement do not state that Michael Richesin is signing on behalf of Donald Richesin as president of Lomas Auto Mall, Inc. These exhibits and the fact that the stock certificate issued to Donald Richesin is undated are sufficient to raise fact issues as to whether Michael Richesin ever owned the stock of Lomas Auto Mall, Inc. or served as its president.

     As to the stock of The Car Company, Inc., Defendant Michael Richesin argues that because the stock was pledged as security and transferred to M. D. Lohman prior to the filing of the bankruptcy petition, the stock is not property of the bankruptcy estate. This argument is flawed. "Purchaser" as defined by N.M.S.A. 1978 § 55-1-201(30) (Cum Supp. 2005) "means a person that takes by purchase," which in, turn, includes "taking by . . . pledge, lien, [or] security

11

interest." N.M.S.A. 1978 § 55-1-201(29) (Cum Supp. 2005). Under N.M.S.A. 1978 § 55-8-104(a), (Repl. Pamp. 2001) "[a] person acquires a security *or an interest therein* . . . if . . . the person is a purchaser to whom a security is delivered pursuant to Section 55-8-301 NMSA 1978." (emphasis added). Nothing in these statutes indicates that the "purchaser," as a person who acquires a security interest in a stock by delivery acquires *all* interests in the stock; rather, such party holding a stock certificate as security for a loan holds *an* interest therein.[7] Defendant Michael Richesin concedes that the stock of The Car Company, Inc. was pledged as security for a loan obtained by M. D. Lohman, and that he "will get the stock back once the promissory notes to Mr. Lohman have been paid." *See* Defendant's Motion for Summary Judgment, p. 7. In this case, the "transfer" of the stock, and the physical possession of the stock by M. D. Lohman did not transfer ownership, but merely served as the method to perfect M.D.Lohman's security interest in the stock. *See* N.M.S.A. § 55-9-313(a) (Cum. Supp. 2005) ("A secured party may perfect a security interest in certificated securities by taking delivery of the certificated securities under Section 55-8-301 NMSA 1978."). Summary judgment, therefore, cannot be granted in favor of Defendant Michael Richesin as to the stock of The Car Company, Inc.

<u>Failure to Plead Claims of Alter-Ego/Corporate Veil Piercing with Sufficient Specificity.</u>

Defendant asserts that the Plaintiff's claim based on a theory of alter ego fails because Plaintiff failed to plead this theory with particularity in accordance with Rule 9(b), Fed.R.Civ.P. Plaintiff responds to this argument by stating that "the alter ego theory so maligned by the debtor

---

[7]*Cf. Rubin v. U.S.,* 449 U.S. 424, 429, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (construing Section 17(a) of the Securities Act of 1933 to hold that a pledge of stock is an "offer of sale" but acknowledging generally that "pledges [of stock as collateral for a loan] transfer less than absolute title").

12

is not the only focus of the trustee's complaint." *See* Trustee's Response, p. 7. While it is correct that the alter ego doctrine is not itself a cause of action, Plaintiff's Complaint does appear to rely on the doctrine as a basis for recovery under his action for turnover. *See* Complaint, prayer for relief, ¶ B; *Fidelity Nat. Title Ins. Co. of New York v. Bozzuto,* 227 B.R. 466, 471 n.8 (E.D.Va. 1998) (noting that "[t]he alter ego doctrine is a method of imposing liability on an underlying cause of action, not an independent cause of action.")(citation omitted). The Court, will, therefore, examine the Complaint to determine whether it contains sufficient allegations of alter ego.

The Complaint asserts that "[t]o the extent that The Car Company and Lomas Auto Mall are alter egos, debtor should be required to turn over the entire business," (*See* Complaint, ¶ 14), and asks the Court to "determine that Lomas Auto Mall and the Car Company are alter egos of each other, [and] are the sole property of the debtor Michael Richesin." *See* Complaint, ¶ A., prayer for relief. Other allegations in the Complaint concerning Plaintiff's claim of alter ego and/or corporate veil piercing are limited to the following:

> The Car Company Inc. conducts business using the trade name of Lomas Auto Mall. Upon information and belief, Lomas Auto Mall, Inc. and the Car Company, Inc. are alter egos of one another. Debtor Michael Richesin effectively controls all operations of the Car Company and Lomas Auto Mall, and Defendant Donald Richesin has no control. *See* Complaint, ¶ 10. Debtor Michael Richesin has the sole management and control of Lomas Auto Mall. Complaint, ¶ 7.

State law applies to determine whether a non-debtor corporation is, in fact, the alter-ego of the debtor or whether the corporate veil should be pierced.[8] Under New Mexico law, the alter

---

[8]*See, Lowell Staats Mining Co., Inc., v. Pioneer Uravan, Inc.,* 878 F.2d 1259 (10th Cir. 1259)(applying Colorado law governing corporate veil piercing); *In re Hertzler Halstead Hosp.,* 334 B.R. 276 (Bankr.D.Kan. 2005)(applying Kansas law to determine whether to pierce the corporate veil); *Towe v. Martinson,* 195 B.R.137, 140 (D.Mont. 1996)(stating that "[w]hether . . .

13

Case 07-01034-m    Doc 15    Filed 10/03/07    Entered 10/03/07 11:05:19 Page 13 of 18

ego doctrine is a requisite to piercing a corporate veil. *Garcia v. Coffman,* 124 N.M. 12, 16, 946 P.2d 216, 220 (Ct.App. 1997). Corporate veil piercing claims requiring a showing of the following elements under New Mexico law: "instrumentality or domination, improper purpose and proximate causation." *Scott v. AZL Resources, Inc.,* 107 N.M. 118, 121, 753 P.2d 897, 900 (1988)(citation omitted).[9] The instrumentality or domination requirement for corporate veil piercing is the alter ego doctrine. *Id.* Because corporate veil piercing is an equitable remedy, something more than mere domination or control is required, so that the separate form of the corporate entity will be ignored only "where the corporation was set up for fraudulent purposes or where to recognize the corporation would result in injustice." *Id.* (citing *Scott Graphics, Inc. v. Mahaney*, 89 N.M. 208, 211, 549 P.2d 623, 626 (Ct.App.)). The New Mexico Supreme Court explained further that the alter ego/corporate veil piercing theory "also requires a showing that recognition of the separate corporate existence of the two corporations would sanction fraud or other improper purposes." *AZL Resources,* 107 N.M. at 121, 946 P.2d at 900 (citing *Harlow,* 100 N.M. at 382, 671 P.2d at 43).

Defendant Michael Richesin asserts that these statements indicate that New Mexico law

---

a trustee can claim the right of alter ego to reach assets of the estate depends on state law")(citation omitted). *See also, Spartan Tube and Steel, Inc. v. Himmelspach, (In re RCS Engineered Products, Co., Inc.),* 102 F.3d 223, 225 (6th Cir. 1996) (noting that "[w]hether a particular cause of action is available to the debtor, and thus constitutes 'property of the estate,' is determined by state law.")(citation omitted).

[9]*See also, Garcia v. Coffman,* 124 N.M. at 15, 946 P.2d at 219 ("The three requirements for piercing the corporate veil are: (1) instrumentality or domination; (2) improper purpose; and (3) proximate cause.")(citing *Harlow v. Fibron Corp.*, 100 N.M. 379, 382, 671 P.2d 40, 43 (Ct.App.1983) (citing Cathy S. Krendl & James R. Krendl, Piercing the Corporate Veil: Focusing the Inquiry, 55 Denver L.J. 1 (1978)).

14

governing alter ego/corporate veil piercing requires a showing of fraud, which must be plead with particularity in accordance with Rule 9(b), Fed.R.Civ.P. This Court disagrees.

Fraud is not one of the necessary elements for recovery under an alter ego theory. Under applicable New Mexico law, relief can be granted where recognizing the separate existence of the two corporations "would sanction fraud *or* other improper purposes" or when "the corporation was set up for fraudulent purposes *or* where to recognize the corporation would result in injustice." *AZL Resources,* 107 N.M. at 121, 753 P.2d at 900. Fraud can serve as the basis for alleging alter ego, but other improper purpose or injustice may also suffice. Thus the specificity required under Rule 9(b), Fed.R.Civ.P. does not apply to claims based on theory of alter ego.[10] Rather, the more liberal notice pleading standards of Rule 8, Fed.R.Civ.P. applies to claims based on the alter ego doctrine.

Under Rule 8, Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7008, Fed.R.Bankr.P., a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), Fed.R.Civ.P. Its purpose it to ensure that defendants are put on sufficient notice of the plaintiff's claims and the factual basis to support those

---

[10]*See Wiebe v. Benefits Management Corp.,* 1993 WL 246096, *1 (D.Kan. 1993) ("As a general rule, allegations of alter ego liability, even when premised on claims of potentially fraudulent conduct, are governed by the liberal notice standard of Rule 8(a) rather than the particularity standard contained in Rule 9(b).")(citations omitted). *Cf. In re Harvard Knitwear, Inc.,* 153 B.R. 617, 626 (Bankr.E.D.N.Y. 1993) (finding that allegations premised on alter ego theory were not fraud claims, implicating Rule 9(b), Fed.R.Civ.P., where claim was predicated on allegations of domination, control, and treatment of corporate assets as defendant's personal assets); *Rolls-Royce Motor Cars, Inc. v. Schudroff,* 929 F.Supp. 117, (S.D.N.Y. 1996) (because under New York law "a veil piercing claimant can prevail without proving fraud, plaintiff's alter ego allegations will not be held to the particularity requirement of Fed.R.Civ.P. 9(b)." Rather, allegations of alter ego are judged under the liberal "notice pleading" standard of Fed.R.Civ.P. 8(a)).

15

claims.[11]

The Court finds that the Complaint put Defendants on sufficient notice of Plaintiff's alter ego theory; however, the allegations to support Plaintiff's alter ego theory are deficient. Plaintiff's alter ego theory is an attempt to show that both companies are really assets of the bankruptcy estate that should be turned over under 11 U.S.C. § 542. The Complaint contains assertions of dominion and control, and asserts further that the transfer of stock of Lomas Auto Mall, Inc. was a sham that was made with the intent to hinder, delay or defraud creditors. *Cf. In re Harvard Knitwear, Inc.,* 153 B.R. 617, 626 (Bankr.E.D.N.Y. 1993) (noting that "[f]ederal courts have consistently held that general allegations of dominion and control will suffice to survive a motion to dismiss claims predicated on an alter ego theory.")(citations omitted). But the Complaint fails to allege how Lomas Auto Mall, Inc. and The Car Company, Inc. acted as alter egos, i.e., did the corporations share one bank account or co-mingle assets, or did Defendant Michael Richesin treat the assets of both companies as his own personal assets. Nor do the paragraphs describing Plaintiff's alter ego theory specifically articulate an improper purpose or proximate causation, two of the elements necessary to a veil piercing claim.[12]

Of course, within the context of bankruptcy, the implied improper purpose is to keep

---

[11]*See In re Sheffield Steel Corp.,* 320 B.R. 405, 415-416 (Bankr.N.D.Okla. 2004) (noting that to satisfy the notice pleading standard under Rule 8 the statement of the claim need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."). *See also Garcia v. Coffman,* 124 N.M. at 15, 946 P.2d at 219 (under the "notice pleading" requirements, "'it is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim [.]'")(quoting *Petty v. Bank of N.M. Holding Co.*, 109 N.M. 524, 526, 787 P.2d 443, 445 (1990).

[12]The Court notes that neither Lomas Auto Mall, Inc. nor The Car Company, Inc. are named as defendants in this proceeding.

16

valuable assets out of the bankruptcy estate, and the implied proximate cause of damage is that creditors of the estate will be prevented from sharing in those assets. Therefore, because the Complaint put Defendants on notice of the Plaintiff's theory that Lomas Auto Mall, Inc. and the Car Company, Inc. are alter egos of each other due to Defendant Michael Richesin's alleged domination, control, and sham transfer of stock to his brother, the Court finds that Plaintiff should be allowed to amend the Complaint rather than suffer dismissal at this juncture. *Cf. Wiebe v. Benefits Management Corp.,* 1993 WL 246096, *3 (D.Kan. 1993)(noting that even if plaintiff's complaint were "insufficient in setting forth the nature of her claims of alter ego, the correct remedy would be to permit amendment rather than require dismissal."). The Complaint should describe with greater particularity the underlying facts supporting Plaintiff's belief that the two companies are alter egos of one another such that all assets of both companies are property of the bankruptcy estate that should be turned over to the trustee.

Based on the foregoing, the Court will deny the motion for summary judgment as to the claims for recovery of fraudulent transfer and turnover of assets, and grant the motion as to the allegations of recovery based on alter ego unless Plaintiff amends the Complaint to plead a more definite statement as to his alter ego theory. An order will be entered in accordance with this Memorandum.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

| | | |
|---|---|---|
| Daniel J. Behles<br>Attorney for Plaintiff<br>226-A Cynthia Loop NW<br>Albuquerque, NM 87114 | William F. Davis<br>Charles R. Hughson<br>Attorney for Michael Richesin<br>6079 Academy NE, Suite A<br>Albuquerque, NM 87109 | Russell C. Lowe<br>Attorney for Donald Richesin<br>PO Box 90536<br>Albuquerque, NM 87199 |